1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

10
11
12
13
14

| | |
|---|---|
| CLARA M. VANDOVER, | ) ED CV 09-740-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM DECISION |
| | ) AND ORDER |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## I. **PROCEEDINGS**

Plaintiff Clara M. Vandover filed a Complaint on April 13, 2009 seeking review of the Decision of the Commissioner of the Social Security Administration denying Disability Insurance Benefits ("DIB"). The parties consented to proceed before United States Magistrate Judge Stephen J. Hillman. Plaintiff filed a brief in support of the Complaint ("plaintiff's brief") on August 25, 2009. Defendant filed an opposition brief ("defendant's brief") on November 23, 2009.

1

## II.  <u>BACKGROUND</u>

On August 30, 2005, plaintiff filed an application for DIB alleging an inability to work commencing on June 6, 2003. The Social Security Administration denied plaintiff's original application initially and upon reconsideration, and plaintiff filed for a hearing before an Administrative Law Judge ("ALJ"). At the hearing on October 15, 2007, plaintiff amended her alleged onset date to January 1, 2005. Following the ALJ's December 19, 2007 Decision that plaintiff was not disabled, plaintiff sought review by the Appeals Council, which declined review on February 20, 2009.

Plaintiff makes five challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred in: 1) failing to provide legally sufficient reasons for discounting the medical opinion of her treating psychiatrist; 2) failing to properly consider lay witness testimony; 3) failing to fully and fairly develop the record; 4) failing to pose a complete hypothetical question to the testifying vocational expert; and 5) finding that, given plaintiff's residual functional capacity ("RFC"), she was capable of performing the jobs of kitchen helper, hospital food service worker, and hospital cleaner. Each of plaintiff's contentions will be addressed in turn. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## III.  <u>DISCUSSION</u>

**ISSUE NO. 1:**     <u>The ALJ Provided Specific and Legitimate Reasons For</u>
<u>Discounting the Opinion of Plaintiff's Treating Psychiatrist</u>

Plaintiff asserts that the ALJ failed to properly consider the medical opinion of her treating psychiatrist, Dr. Arezoo Rahmim. In response, defendant argues that the ALJ properly considered Dr. Rahmim's opinion and provided specific, legitimate reasons supported by substantial evidence for assigning it reduced weight.

A treating physician's opinion is entitled to greater weight than that of an examining physician. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Id.</u> The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527 (2009). "The [Commissioner] may disregard the treating physician's opinion whether or not that opinion is contradicted." <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 751.

Where the medical evidence is in conflict, the Commissioner has the discretion to choose between the contradicted evidence. <u>Sanchez v. Secretary of Health and Human Servs.</u>, 812 F.2d 509, 511 (9th Cir. 1987). Where the evidence is susceptible of more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. <u>Key v. Heckler</u>, 754 F.2d 1545, 1549 (9th Cir. 1985).

Even if the treating physician's opinion is contradicted by another doctor, the ALJ  may not reject the treating physician's opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995). Providing specific and legitimate reasons means setting out a detailed and thorough summary of the facts and conflicting clinical evidence and making interpretations and findings. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 2001). While a nonexamining physician's opinion, "without more," cannot constitute substantial evidence, it may serve as substantial evidence if supported by other evidence in

1    the record and is consistent with it. Id. at 1041-42.

2       Contrary to plaintiff's contention, the ALJ provided specific and legitimate

3    reasons supported by substantial evidence in the record to assign minimal weight

4    to Dr. Rahmim's medical opinion. (Administrative Record ["AR"] 18-19).

5       In his May 24, 2006 *Work Capacity Evaluation (Mental)* form, Dr.

6    Rahmim indicated that plaintiff suffered two extreme limitations, seven marked

7    limitations, and three moderate limitations. (AR 240-41). The ALJ's opinion

8    cites specific medical evidence that was inconsistent with the degree of

9    impairment indicated in Dr. Rahmim's checklist assessment. (AR 18-19). The

10    ALJ summarized treating psychologist Dr. Christopher Marsey's psychological

11    evaluation of plaintiff, in which Dr. Marsey opined that plaintiff exhibited

12    "overall significant impairment," but displayed "erratic and inconsistent

13    performance on memory tasks," concluding that plaintiff likely suffered from a

14    "cognitive dysfunction" rather than a "true organic process." (AR 18, 164). The

15    ALJ also discussed in detail the independent clinical findings of an examining

16    consultant, Clinical Psychologist Dr. Kim Goldman, who found that plaintiff's

17    performance on a test for memory malingering indicated "she is attempting to

18    simulate cognitive impairment." (AR 19, 217).

19       In presenting and interpreting these specific medical findings, the ALJ's

20    opinion provided specific and legitimate reasons to discount Dr. Rahmim's

21    medical opinion. The ALJ credits Dr. Marsey's specific findings of significant,

22    but non-organic, cognitive dysfunction and inconsistent performance on memory

23    tasks. (AR 18-19). The ALJ properly interpreted Dr. Marsey's opinion in light of

24    Dr. Goldman's independent clinical evidence of malingering, concluding that

25    plaintiff suffers from emotional disorders that cause less than marked or extreme

26    limitations.

27       To support this conclusion, the ALJ cited the corroborating opinion of

28    nonexamining medical expert Dr. William Soltz, who rejected Dr. Rahmim's

opinion regarding the severity of plaintiff's impairments after reviewing the medical record. (AR 19). Dr. Soltz based his conclusion not only on review of Dr. Marsey's opinion and Dr. Goldman's independent clinical findings, but also on the opinion of treating neurologist Dr. Rosemarie Ensat. (AR 261-62, 267). Dr. Ensat opined that plaintiff suffered from a "pseudo type of dementia," which Dr. Soltz interpreted to mean, "a nice way of putting suspicious findings that don't meet the criteria of an organic impairment." (AR 140, 263). Dr. Ensat also found that plaintiff performed "reasonably well" on a test of serial sevens (counting forwards and backwards in increments of seven), which Dr. Soltz described as, "a hard task, particularly for somebody[] who's maintaining significant memory impairment." (AR 140, 267).

The ALJ's opinion properly observed that clinical evidence of malingering by plaintiff undermined the reliability of Dr. Rahmim's opinions, which were based in part on plaintiff's own symptom reporting. (AR 19; see 161-63, 166-69, 245, 248). The ALJ properly noted inconsistency between Dr. Rahmim's own progress notes showing positive response to medication and his checklist opinion that plaintiff suffered extreme limitations. (AR 19; see 166, 168-69). Contrary to plaintiff's contention on this point, (see plaintiff's brief at 3-4), the ALJ did not misconstrue or selectively consider Dr. Rahmim's medical notes. Rather, the ALJ's opinion accurately and methodically summarizes Dr. Rahmim's progress notes, including a chronological treatment summary and reference to documented complaints of depression, nervousness, mood swings, poor appetite, erratic sleep, and worsening memory problems. (See AR 18). Furthermore, the ALJ's finding that plaintiff suffered from moderate, non-organic cognitive and emotional limitations, as opposed to extreme impairment, (AR 19), is consistent with Dr. Rahmim's notes.

Therefore, the ALJ provided specific and legitimate reasons for assigning less than controlling weight to Dr. Rahmim's opinion.

**ISSUE NO. 2:**      The ALJ's Failure to Mention Competent Lay Witness
                     Testimony Is Harmless Error

Plaintiff asserts that the ALJ erred by failing to even mention the lay testimony of Debra Jett ("Jett"), whose testimony was relevant to assessing the severity of plaintiff's impairment and residual functional capacity ("RFC"). In response, defendant admits the ALJ erred in failing to consider Jett's testimony but argues the error is harmless.

Lay witness testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence and cannot be disregarded without comment. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Where the ALJ fails to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, 454 F.3d 1050, 1056 (9th Cir. 2005).

Here, although the ALJ erred in not mentioning Jett's testimony, this error is harmless. The crux of Jett's testimony at the administrative hearing was as follows: Jett holds power of attorney on plaintiff's behalf; Jett has been paying plaintiff's bills since April [2007]; plaintiff's condition has gone through a "big decline" since they met in 1997; plaintiff has gone to the bank and forgotten why she is there; plaintiff was once a financial wizard and now cannot balance her checkbook; plaintiff has made multiple monthly house payments in the same month; plaintiff has forgotten groceries and had to return to the store; and on one occasion when plaintiff's medication was not refilled, plaintiff called Jett fifteen times daily for a week asking Jett the same questions repeatedly until the matter was resolved. (AR 270-72). Jett admitted that her testimony  about plaintiff's daily activities is hearsay that is based on what Jett has been told by plaintiff's

1 roommate and daughter. (see AR 272).

2     Jett's testimony does not controvert the ALJ's RFC determination that
3 plaintiff can perform "simple, repetitive tasks" that do not involve complicated
4 interpersonal relationships, heights, or dangerous equipment. (AR 19). Instead,
5 Jett tended to confirm the ALJ's RFC assessment when she testified that plaintiff
6 "can do basic functioning as long as there's nobody around her, no outside
7 influence." (AR 271).

8     Since Jett's testimony did not conflict with the ALJ's RFC determination,
9 and the ALJ's disability determination was based on plaintiff's RFC, no
10 reasonable ALJ fully crediting Jett's testimony could have reached a different
11 disability determination.

12

13 **ISSUE NO. 3:**    The ALJ Fully and Fairly Developed the Record

14     Plaintiff asserts that the absence of a possible "repeat neuropsych test"
15 ("the test") in the record, despite reference to this possible document in Dr.
16 Soltz's testimony, (see AR 265), triggered the ALJ's duty to develop the record,
17 but that the ALJ failed to discharge this duty. Plaintiff further contends that the
18 ALJ's failure prevented Dr. Soltz from rendering a fair and accurate assessment
19 of plaintiff's functional limitations. In response, defendant argues that
20 notwithstanding the absence of the test, the medical record was unambiguous,
21 and the record failed to corroborate plaintiff's claimed limitations.

22     The ALJ has an independent duty to investigate all issues and develop a
23 record in order to make a fair determination as to disability. Tonapetyan v.
24 Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ's duty to develop the record
25 is triggered only when the evidence is ambiguous or the record is inadequate to
26 allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453,
27 459-60 (9th Cir. 2001).

28     Here, contrary to plaintiff's contention, the medical evidence was not

ambiguous. As noted above, and as found by the ALJ (<u>See</u> AR 18-19, 164, 217, 264-67), the medical record consistently indicates that plaintiff suffers from moderate cognitive impairment resulting from non-organic, emotional dysfunction. The ALJ adopted this characterization of the medical record. (<u>See</u> AR 19). There was no objective, clinical evidence of extreme cognitive impairment in the medical record. The clinical evidence uniformly supported the ALJ's determination that plaintiff suffered from moderate, non-organic cognitive and emotional impairment.

Even assuming that the ALJ had obtained the test, that the test supported Dr. Rahmim's assessment of plaintiff's impairment, and that Dr. Soltz took these new results into consideration in evaluating Dr. Rahmim's opinion, the remaining medical consensus and clinical data combined with the evidence of malingering would still constitute substantial evidence sufficient to support the ALJ's decision to discount Dr. Rahmim's opinion. Therefore, inclusion of the test in the medical record would not have resolved any legally meaningful ambiguities or uncertainties.

**ISSUE NO. 4:**      <u>The ALJ Posed a Complete Hypothetical to the Vocational Expert</u>

Plaintiff asserts that the ALJ failed to pose a complete hypothetical question to the vocational expert ("VE"). In response, defendant argues that the ALJ's hypothetical question properly included all limitations supported by the medical record, and that the ALJ properly excluded Dr. Rahmim's medical opinion from consideration.

A hypothetical question posed to a vocational expert must set out <u>all</u> the limitations and restrictions of the claimant. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). The hypothetical question must be accurate, detailed, and supported by the medical record. <u>Gamer v. Secretary of</u>

1  Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987). However, the
2  ALJ is not required to include limitations in the hypothetical that are not
3  supported by substantial evidence. See Osenbrock v. Apfel, 240 F.3d 1157,
4  1164-65 (9th Cir. 2001).

5       The ALJ's hypothetical to the VE referenced a state agency's mental RFC
6  assessment of plaintiff, and included five moderate mental limitations. These
7  included limitations in plaintiff's ability to: understand and remember detailed
8  instructions, to carry out detailed instructions, to maintain attention and
9  concentration for extended periods, to complete a normal work-week without
10 interruption from psychological symptoms and perform at a consistent pace, and
11 to interact appropriately with the general public. (See AR 231-32, 279).

12      Since, as discussed above, the ALJ provided specific and legitimate
13 reasons to discount Dr. Rahmim's opinion, the ALJ's hypothetical properly
14 omitted Dr. Rahmim's opinion about the severity of plaintiff's mental limitations.
15 Moreover, contrary to plaintiff's contention, the ALJ's hypothetical did not fail
16 to consider all of plaintiff's limitations. The ALJ merely relied upon an
17 assessment of plaintiff's limitations that assigned a lower degree of severity than
18 Dr. Rahmim's assessment. (AR 231, 240, 278-79). For example, Dr. Rahmim's
19 assessment found plaintiff suffered extreme limitation in her ability to "maintain
20 attention and concentration for extended periods," and "remember locations and
21 work-like procedures." (AR 240). These categories are the same or similar to the
22 categories of limitation included in the ALJ's hypothetical.

23      Therefore, the ALJ posed a complete hypothetical to the VE.

24

25 **ISSUE NO. 5:**       The ALJ Properly Found Plaintiff Capable of Performing
26                        Other Jobs in the National Economy

27      Plaintiff contends the ALJ erred in concluding that plaintiff's RFC
28 permitted her to perform other jobs available in the national economy, including

kitchen helper, hospital cleaner, and hospital food service worker. Plaintiff argues that the Dictionary of Occupational Titles ("DOT") categorizes these jobs as requiring level two reasoning ability or higher on a six-level scale, and that this level of reasoning exceeds plaintiff's RFC. In response, defendant argues these alternative jobs accommodate plaintiff's RFC.

Work exists in the national economy when there is a significant number of jobs in one or more occupations with requirements plaintiff is able to meet given plaintiff's RFC and vocational qualifications. See 20 C.F.R. 404.1566(b). A plaintiff with an RFC limited to "simple, repetitive tasks" is not precluded from performing jobs described in the DOT as requiring level 2 reasoning skills. Lara v. Astrue, 305 Fed. Appx. 324, 326 (9th Cir. 2008); see DOT Appendix C, Section III. Even if the ALJ incorrectly concludes a plaintiff is capable of performing particular jobs, such error is harmless if there are other jobs which the ALJ correctly concludes plaintiff can perform. Id.

The ALJ found that plaintiff's RFC limits her to "simple, repetitive tasks" and precludes work involving complicated interpersonal relationships, heights, or dangerous equipment. (AR 19). Contrary to plaintiff's contention, plaintiff's RFC does not preclude her from performing the duties of at least one other occupation—hospital cleaner—identified by the ALJ. An RFC limiting plaintiff to "simple, repetitive tasks" does not preclude plaintiff from performing jobs that require level two reasoning capacity, including both the hospital cleaner and kitchen helper positions. See Lara, supra ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); DOT 318.687-010, 323.687-010.

Assuming arguendo that plaintiff's RFC precludes her from performing the duties of a kitchen helper (which involves use of dangerous equipment) and

hospital food service worker (which requires level three reasoning skills), plaintiff has provided no convincing reason why her RFC precludes her from performing the duties of a hospital cleaner. There is no indication the hospital cleaner position involves dangerous equipment, heights, or complicated interpersonal relationships. See DOT 323.687-010. In fact, the duties required of a hospital cleaner are similar to the duties plaintiff testified she was able to perform. Plaintiff admitted she can clean the interior and exterior of her house, do laundry, and clean dishes. (See AR 274-78). Therefore, even if the ALJ incorrectly found plaintiff capable of performing the jobs of kitchen helper and hospital food service worker, such error would be harmless because plaintiff's RFC does not preclude her from performing the job of hospital cleaner.

### CONCLUSION AND ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed and the Complaint is dismissed.

DATED: March 5, 2010

_____

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

11